UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EDWARD ESPOSITO,

                Plaintiff,                            13-cv-803(MKB)(VMS)

   -against-                             **AMENDED COMPLAINT**

THE CITY OF NEW YORK, and JOSE DEJESUS,
THOMAS FISCH, ERIC SAMUELS, and MIGUEL
NUNEZ, each in their individual capacities,

                Defendants.

Demand for Jury Trial
-----------------------------------------------------------------X

Plaintiff Edward Esposito, by and through his attorneys LeBow & Associates, PLLC, complains of the Defendants, and each of them, as follows:

**PRELIMINARY STATEMENT**

Plaintiff Edward Esposito brings this action under 42 USC §§1983 and 1988 to redress Defendants' violations of his Constitutional rights. Defendants other than the City of New York were New York City Police Department officers acting under the color of state law.

Specifically, on or about September 17, 2010, Defendant NYPD officers Fisch, Nunez, and Samuels wrongfully arrested Plaintiff without probable cause. Fisch, Nunez, and Samuels, in circumstances in which it was or should have been obvious that Plaintiff did not assault or recklessly endanger anyone, acted to wrongfully arrest Plaintiff for assaulting and recklessly endangering off-duty NYPD officer DeJesus, based on testimony from Defendant DeJesus that was false, and that Fisch, Nunez, and Samuels should have known was false. Fisch then charged Plaintiff based on that same false information from DeJesus. Plaintiff therefore asserts causes of

1

action against Fisch, Nunez, and Samuels for false arrest and false imprisonment, and against Fisch and DeJesus for malicious prosecution.

Plaintiff asserts a claim against the City of New York based upon entity liability, and allege that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiff and others, and that directly and proximately caused the violations of Plaintiff's Fourth Amendment rights complained of herein.

Plaintiff seeks compensatory and punitive damages from Defendants DeJesus, Fisch, Nunez, and Samuels, and compensatory damages from Defendant City of New York.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the civil rights claims asserted herein against Defendants DeJesus, Fisch, Nunez, Samuels, and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3).  Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Eastern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiff Edward Esposito was a resident of 73 Monroe Avenue, Brooklyn, NY 11216, and a citizen of the United States.

3. At all times relevant herein, Defendant Jose DeJesus was a police officer employed by the New York City Police Department ("NYPD") and assigned to the 78th Precinct in the Park Slope neighborhood of Brooklyn.

4. At all times relevant herein, Defendant Thomas Fisch was a police officer employed by the NYPD and assigned to the 78th Precinct.

5. At all times relevant herein, Defendant Miguel Nunez was a police officer employed by the NYPD and assigned to the 78th Precinct.

6. At all times relevant herein, Defendant Sergeant Eric Samuels was a police officer employed by the NYPD and assigned to the 78th Precinct.

7. At all times relevant herein, the City of New York was a municipal corporation existing under the laws of the State of New York.  As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline, and conduct of the officers it employs.

## IV. STATEMENT OF FACTS

8. At all times relevant herein, Plaintiff Edward Esposito was a citizen of the United States and a resident of Brooklyn, NY.

9. At all times relevant herein, Defendant Jose DeJesus was an NYPD officer assigned to the 78th Precinct.

10. At all times relevant herein, Defendant Thomas Fisch, was an NYPD officer assigned to the 78th Precinct.

11. At all times relevant herein, Defendant Miguel Nunez was an NYPD officer assigned to the 78th Precinct.

12. At all times relevant herein, Defendant Sergeant Eric Samuels was an NYPD officer assigned to the 78th Precinct.

13. On or around 11:00 AM, on or about September 17, 2010, Plaintiff was driving his car on Flatbush Avenue near Grand Army Plaza in Brooklyn, NY.

14. On or around that time, DeJesus, an NYPD officer, was driving around the same location.

15. On information and belief, DeJesus was off-duty, and was wearing civilian clothes and driving a civilian vehicle.

16. On information and belief, DeJesus unexpectedly pulled his car in front of Plaintiff's car without using his turn signal. The two drivers then stopped next to one another at a red light. Plaintiff, who was unaware that DeJesus was a police officer, rolled down his window and told DeJesus that he should use his turn signal.

17. On information and belief, DeJesus then put on a windbreaker displaying the NYPD logo and demanded that Plaintiff pull over his car, which Plaintiff did.

18. On information and belief, DeJesus, without verbally identifying himself as a police officer or displaying his police badge, approached Plaintiff's car and demanded that Plaintiff show DeJesus his vehicular paperwork. Plaintiff insisted that DeJesus show Plaintiff his police badge before Plaintiff would produce his paperwork. DeJesus refused to show Plaintiff his police badge.

19. On information and belief, Plaintiff, unconvinced that DeJesus was an actual police officer, started to drive away and turn left. While Plaintiff drove, DeJesus walked alongside Plaintiff's car, then hit Plaintiff's car, and then started screaming and complaining that Plaintiff had driven over his foot.

20. On information and belief, a police van approached the location and officers Fisch, Nunez, and Samuels arrived on the scene. Thereafter, Fisch declared Plaintiff under arrest and handcuffed him.

21. On information and belief, while Plaintiff waited in the van, DeJesus was walking around normally, and entered the van, which was at a height off the ground, and DeJesus displayed no

limp while doing so, all of which was within view of Fisch, Nunez, and Samuels, thereby showing that DeJesus' claims of having an injured foot were false.

22. On information and belief, while DeJesus was in the police van with Plaintiff, dirt from the side of Plaintiff's car was on the back side of DeJesus' jeans, rendering it a physical impossibility that Plaintiff's car could have run over DeJesus' foot.

23. On information and belief, Fisch, Nunez, and Samuels took Plaintiff to the 78th Precinct. Fisch initiated several misdemeanor charges against Plaintiff, including assault in the third degree and reckless endangerment in the second degree. Plaintiff was released on his own recognizance approximately 36 hours later.

24. At no point while Plaintiff's criminal case proceeded did the police or the District Attorney's office produce any kind of evidence documenting DeJesus' alleged foot injury, such as X-rays, other medical records, or even photographs.

25. On information and belief, Plaintiff had to return to court at least nine times before the case against him was finally dismissed on November 21, 2011.

## V. FIRST CAUSE OF ACTION - CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
### (Against Defendants Fisch, Nunez, Samuels, and DeJesus)

26. Plaintiff repeats, reiterates, and reaffirms each and every allegation contained in paragraphs 1 through 25 of this Complaint with the same force and effect as though fully set forth herein.

27. As a result of the actions of Defendants Fisch, Nunez, Samuels, and DeJesus, which began on or about September 17, 2010, the Plaintiff was deprived of his rights under the United States Constitution and federal civil rights law. Plaintiff's rights are secured by the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

5

28. The actions of Defendants Fisch, Nunez, Samuels, and DeJesus were committed under the color of law and were intentional and willful.

29. On or about September 17, 2010, Fisch, Nunez, and Samuels intended to confine Plaintiff.

30. On or about September 17, 2010, Plaintiff was conscious of being confined.

31. On or about September 17, 2010, Plaintiff at no time consented to being confined by Fisch, Nunez, and Samuels, but cooperated with them because they were NYPD officers acting in an official capacity.

32. On information and belief, Fisch, Nunez, and Samuels knew or should have known that Plaintiff did not actually run over DeJesus foot, because DeJesus did not have any visible signs of injury and was walking around normally, and because the dirt from Plaintiff's car was on the back of DeJesus' jeans.

33. In view of the fact that Fisch, Nunez, and Samuels did not possess sufficient information for a reasonable person to believe that Plaintiff had criminally assaulted or recklessly endangered DeJesus by running over his foot, and had no reason to believe that Plaintiff had committed any other crime, they therefore did not possess knowledge sufficient for a reasonable person to believe that Plaintiff was committing or had committed a crime at the time of his arrest.

34. In view of the fact that Fisch, Nunez, and Samuels did not possess information upon which a reasonable person could have believed that Plaintiff had committed or was committing a crime at the time of arrest, Fisch, Nunez, and Samuels did not have probable cause to arrest and confine Plaintiff.

35. Neither on nor about September 17, 2010, nor at any other relevant time herein, did Fisch, Nunez, or Samuels possess a warrant for Plaintiff's arrest and confinement.

36. Neither on nor about September 17, 2010, nor at any other relevant time herein, did a warrant for Plaintiff's arrest and confinement exist.

37. In view of the fact that Fisch, Nunez, and Samuels intended to confine Plaintiff, Plaintiff was conscious of his confinement, Plaintiff did not consent to his confinement, and his confinement was not privileged since it was not conducted pursuant to a warrant or probable cause, Plaintiff's confinement was therefore unlawful and actionable under 42 U.S.C. §1983.

38. The actions of Fisch, Nunez, and Samuels amounted to false arrest and false imprisonment under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

39. As a direct and proximate result of Plaintiff's false arrest and false imprisonment, Plaintiff was caused to suffer a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence.

40. On or about September 17, 2010, Defendant Fisch initiated charges against Plaintiff for assault in the third degree and reckless endangerment in the second degree, and did so based on Defendant DeJesus' false statement that Plaintiff ran over his foot.

41. On or about November 21, 2011, the charges against Plaintiff for assault in the third degree and reckless endangerment in the second degree were dropped.

42. On or about September 17, 2010, Fisch knew or should have known that Plaintiff did not actually run over DeJesus' foot, because DeJesus did not have any visible signs of injury and was walking around normally, and because the dirt from Plaintiff's car was on the back of DeJesus' jeans, and Fisch did not have any other reason to believe Plaintiff assaulted or recklessly endangered DeJesus.

43. In light of the fact that Fisch did not possess sufficient information for a reasonable person to believe that Plaintiff had criminally assaulted or recklessly endangered DeJesus, he therefore did

7

not possess knowledge sufficient for a reasonable person to believe that Plaintiff had committed the crime of assault in the third degree or reckless endangerment in the second degree at the time of the charges, and he did not have probable cause to charge Plaintiff with those crimes.

44. Fisch initiated charges against Plaintiff due to seeking retaliation against him on behalf of DeJesus, or otherwise for reasons other than seeking justice in accordance with the law.

45. DeJesus gave false information to Fisch that resulted in the initiation of charges against Plaintiff due to seeking retaliation against Plaintiff, or otherwise for reasons other than for seeking justice in accordance with the law.

46. Fisch's initiation of criminal proceedings against Plaintiff on the above charges without probable cause and for a motive other than seeking justice in accordance with the law, and DeJesus giving false information to Fisch in order to induce a criminal prosecution of Plaintiff, were acts of actual malice against Plaintiff.

47. Plaintiff suffered post-arraignment restrictions on his liberty when he had to return to court at least nine times before the charges against him were finally dropped.

48. As a direct and proximate result of the malicious prosecution of Plaintiff, Plaintiff was caused to suffer a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence.

49. The actions of Fisch and DeJesus amounted to malicious prosecution under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

## VI. SECOND CAUSE OF ACTION- ENTITY LIABILITY (Against Defendant City of New York)

50. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 49 of this Complaint with the same force and effect as though fully set forth herein.

51. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of Plaintiff's Fourth Amendment rights as alleged herein.

52. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to retaliate against certain individuals, to make arrests and secure prosecutions in order to advance their careers, to gain media attention by arresting high-profile suspects, or to obtain a prosecution when an officer believes that a defendant is guilty but the evidence against that defendant is not sufficient to establish probable cause.

53. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to make unlawful arrests or bring false charges.

54. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to make unlawful arrests or bring false charges, if those officers are properly supervised and disciplined they would almost always be deterred from making unlawful arrests or bringing false charges due to the understanding that they would be held liable if they do so, and if those officers were properly trained, they would be fully aware of (A) when it is legal to arrest and charge a suspect and the proper procedures for carrying out an arrest, (B) their responsibilities under the law to make only lawful arrests and bring only truthful charges

justified by the available evidence, and (C) the consequences they would face for false charges or unlawful arrests.

55. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers making unlawful arrests or bringing false charges would be the deprivation of the constitutional rights of citizens, such as unlawful arrests, malicious prosecutions, and wrongful imprisonment of citizens, thereby violating those citizens' Fourth Amendment rights.

56. In light of the fact that responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would make unlawful arrests and bring false charges for various reasons other than achieving justice in accordance with the law, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiff and other individuals who were unlawfully arrested or falsely charged.

57. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, Plaintiff was falsely arrested and wrongfully charged, and sustained a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and Plaintiff was forced to return to court at least nine times before the charges against him were dropped.

58. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, the Plaintiff's Fourth Amendment Rights were violated, and he suffered great mental anguish, emotional distress, and public humiliation, and continues to suffer post-traumatic stress.

59. As a result of the foregoing, Plaintiff sustained the damages previously described, and seeks compensatory damages from the City of New York.

**WHEREFORE** Plaintiff demands judgment against Fisch, Nunez, Samuels, and DeJesus in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000) in punitive damages on the First cause of action, and against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the Second cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York
      June 17, 2013

Respectfully submitted,
LEBOW & ASSOCIATES, PLLC

*/s/ James B. LeBow*

_____
James B. LeBow, Esq. (JL4535)
570 Lexington Avenue, 16th Floor
New York, New York 10022
Tel. (212) 868-3311
Fax (646) 619-4555